IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES SCOTT THOMPSON,

   Petitioner,

v.          CASE NO. 3:16-cv-374-MCR-GRJ

SECRETARY, DEP'T
OF CORRECTIONS,

   Respondent.

_____/

## REPORT AND RECOMMENDATION

   This case is before the Court on the Petition for Writ of Habeas

Corpus under 28 U.S.C. § 2254, stemming from Petitioner's conviction for

second degree murder with a firearm. (ECF No. 1.) Respondent has filed a

response and appendix with relevant portions of the state-court record,

arguing that the Petition should be denied. (ECF No. 19.) Petitioner has

note filed a reply and the time for doing so has expired. The Petition is

therefore ripe for review. Upon due consideration of the Petition, the

response, and the state-court record, the undersigned recommends that

the Petition should be denied.[1]

_____

   [1] The Court has determined that an evidentiary hearing is not warranted because
the Court may resolve the Petition on the basis of the record. *See* Rule 8, Rules

## State-Court Proceedings

Petitioner was indicted on November 8, 2011, for first degree murder of his wife with a firearm. (ECF No. 19-1 at 13–14.) Prior to trial defense counsel filed four motions in limine. (*Id.* at 28–35.) The trial court construed all four motions in limine as motions to suppress and denied the motions. (ECF No. 19-3 at 18–23, 27–30.)

Petitioner proceeded to jury trial on December 18 and 19, 2012. (*Id.* at 38–336; ECF No. 19-4 at 1–25.) The jury found Petitioner guilty of the lesser included offense of second degree murder, during which Petitioner possessed and discharged a firearm which resulted in death or great bodily harm. (ECF No. 19-1 at 117–18.) The trial court sentenced Petitioner on February 7, 2013, to fifty years imprisonment. (*Id.* at 120–47, 196.)

Petitioner filed his notice of appeal on March 4, 2013. (*Id.* at 212.) Petitioner raised one issue in his initial brief on direct appeal: The trial court erred in denying Petitioner's motions in limine when it ruled that Petitioner knowingly and intelligently waived his *Miranda* rights. (ECF No. 19-4 at 27–45.) On March 13, 2014, the First District Court of Appeal ("First DCA") per curiam affirmed without written opinion and the mandate followed on March 31, 2014. (*Id.* at 72, 75.) Petitioner subsequently filed a *pro se*

Governing Habeas Corpus Petitions Under Section 2254.

motion for rehearing, which the First DCA denied. (*Id.* at 77–80.)

In the meantime, on March 28, 2014, Petitioner filed a *pro se* motion for modification of sentence under Fla. R. Crim. P. 3.800(c), seeking a reduction of sentence based on the totality of the circumstances. (*Id.* at 82–91.) The trial court denied the motion on April 4, 2014. (*Id.* at 93.)

Petitioner next filed a *pro se* motion for postconviction relief on January 13, 2015, alleging five grounds of ineffective assistance of trial counsel. (*Id.* at 103–30.) The circuit court summarily denied the motion on December 18, 2015. (*Id.* at 178–81.) Petitioner then filed a motion for rehearing, which the circuit court denied on January 20, 2016. (*Id.* at 219–27.) Petitioner appealed to the First DCA, but the First DCA per curiam affirmed without written opinion on June 3, 2016. (*Id.* at 228, 237–58, 263.) The mandate followed on August 2, 2016. (*Id.* at 272.)

Petitioner filed his Petition in this Court on July 22, 2016. ECF No. 1.

## Scope of Federal Habeas Review

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. §§ 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in

a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see also* § 2254(e)(1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court)

to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74–77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404–06 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams*, 529 U.S. at 362). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412–13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state

court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

In *Gill*, the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests. The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. 633 F.3d at 1288 (citing *Harrington v. Richter*, 526 U.S. 86 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S. Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded

that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was

denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## Discussion

### *Ground One: The trial court did not violate Petitioner's right to due process by denying his motions in limine.*

Petitioner argues in ground one that the trial court erred in denying his motions in limine. Petitioner says the trial court's rulings were contrary to his constitutional right to a fair and unbiased trial. Respondent contends that ground one is without merit.

As a threshold matter ground one is insufficiently pled. Petitioner offers no facts in support of his claim, nor does he suggest how the trial court's rulings were contrary to federal law. Assuming, however, that this claim is the same claim that Petitioner raised on direct appeal, the claim is without merit.

Petitioner's motions in limine sought to exclude: (1) any statements made by Petitioner to Deputy Suhi at the scene of the crime, including Petitioner's statement, "I shot her," because Deputy Suhi questioned Petitioner without advising Petitioner of his *Miranda*[2] rights; (2) any statements made by Petitioner to Investigator Jackson at the Escambia County Sheriff's Office because Petitioner was questioned without being advised of his *Miranda* rights; (3) cumulative, redundant, graphic, and gory

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

photographs of the victim; and (4) any statements Petitioner made to Investigator Baggett while in the rear seat of Deputy Suhi's patrol car at the scene of the crime because Investigator Baggett only read Petitioner a portion of his *Miranda* rights. (ECF No. 19-1 at 28–35.) The trial court denied the motions and the First DCA affirmed.

Petitioner has not demonstrated that the First DCA's decision was contrary to, or involved an unreasonable application of clearly established federal law. For starters, Petitioner does not contend that the trial court's factual findings were unreasonable and this Court must presume that the trial court's factual findings were correct. Moreover, the trial court held a "full, fair, and adequate hearing" on Petitioner's motions and the record fairly supports the trial court's findings of fact. *See* § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Mincey v. Head*, 206 F.3d 1106, 1131 (11th Cir. 2000) (noting that the district court was bound by the state court's findings of historical fact because the state court held a "full, fair, and adequate hearing" on the claim and the record supported the state court's findings of fact).

When a suspect is in custody and subject to questioning, procedural

safeguards must be employed to protect the suspect's right to be free from self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). Prior to questioning, the suspect must be advised that (1) he has a right to remain silent, (2) anything he says can be used against him in a court of law, (3) he has the right to the presence of an attorney, and (4) if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. *Id.* at 444. Absent a valid waiver of these rights, evidence obtained as a result of the interrogation may not be used against the suspect. *Id.*

A valid waiver requires two things. First, the suspect must have voluntarily relinquished these rights through a free individual choice rather than intimidation, coercion, or deception. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Second, the waiver must have been made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.* Nevertheless, a court may properly conclude that *Miranda* rights have been waived "[i]f the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension . . . ." *Id.* at 421 (citations omitted).

*Miranda* warnings are only required, however:

> where there has been such a restriction on a person's freedom as to render him "in custody." *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). To determine whether someone is "in custody," we first look at the "circumstances surrounding the interrogation." *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995). "Given those circumstances," we then consider whether a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* The "ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (quotation marks omitted).

*Cordera v. Sec'y, Fla. Dep't of Corr.*, 636 F. App'x 552, 555 (11th Cir. 2016).

With respect to the first motion seeking to exclude Petitioner's statement to Officer Suhi admitting that he shot his wife, the trial court found that *Miranda* warnings were not required because Officer Suhi asked who shot the victim immediately upon arriving to the scene when Petitioner was not in custody. The state trial judge wrote:

> The officer has just responded. There are two people standing over a person on the ground. The officer hadn't drawn his firearm. He hadn't hollered any commands. He hadn't said – he hadn't given any directions, hadn't said, don't leave, don't move, show me your hands, he hasn't done anything like that. He just simply – his initial question was, who shot her?
> And my conclusion is – my finding is no reasonable person, under those circumstances, would believe that they were in custody at the time, that that occurred.

(ECF No. 19-3 at 18.) The trial court also found that Petitioner's head nod toward a fence was a "communication" in response to Officer Suhi's question about the location of the gun, but was nevertheless admissible under *New York v. Quarles*, 467 U.S. 469 (1984), because the question was necessary for officer safety and therefore was not an interrogation requiring *Miranda* warnings. (*Id.* at 22.)

Based on these reasons explained by the trial court, a reasonable jurist could conclude that Petitioner was not in custody when he admitted that he shot his wife and that Officer Suhi's question about the location of the gun was not an interrogation. Petitioner has therefore failed to demonstrate that the state court's decision with respect to the first motion in limine was contrary to, or involved an unreasonable application of clearly established federal law.

As to the second motion in limine seeking to exclude Petitioner's incriminating statements at the police station before invoking his right to remain silent, and the fourth motion in limine seeking to exclude Petitioner's incriminating statements to Investigator Baggett while in the patrol car, the trial court found:

> Mr. Thompson was alert at the time, that he was oriented to his circumstances, that all of his – that his initial response, when the officer got there, was coherent and was a logical response,

that there was no unnecessary force used by the officer nor threat of force. The officer did handcuff him, which is routine for safety purposes.

. . . .

He was in a police car, but beyond that, there was no – no other coercive action being taken by the law enforcement officers. The tone of the questioning was not in an aggressive or threatening manner.

As I said, he – as I said yesterday, Mr. Thompson had expressed awareness of the circumstances by expressing concern for his mother, making sure they were aware that his mother was there and that she was being attended to. And though he was not asked the explicit question, do you wish to give up your rights and answer questions, he was explained all of his rights.

And the question of whether or not a person understands those rights has not been held to be a part of the rights that must be explained. My conclusion is he was explained all of his rights and there was no physical, or psychological pressure or coercion at that point. He was free to make of it what he chose. When he was advised of his rights, there was no suggestion that he did not have the option of not answering. He was not forced to answer in any way, and my conclusion is that he voluntarily give up his right to remain silent and answered questions. And then I also conclude that when questioning occurred within an hour later, the initial questioning at the Sheriff's department, that he had been recently enough advised of his rights, and had not invoked his right to remain silent nor had requested counsel prior to that second questioning at the Sheriff's department, up until the point that he did. We know that – I think I was told 11 minutes into it . . . that he did invoke his rights.

(*Id.* at 27–29.) The trial court therefore denied the motions in limine

seeking to suppress Petitioner's statements "at the scene and the initial

statement that he made, up until the time that he invoked his right to

remain silent, when he was speaking in response to questions." (*Id.* at 29–30.) The trial court further explained that although it was not part of a motion, the incriminating statements Petitioner made while alone in the interrogation room at the police station after invoking his right to remain silent were not in response to custodial interrogation and were therefore also admissible. The trial court reasoned as follows:

> I'll make it clear that the statement that he made while there was no one in the room, no one was questioning him, were in not in response to custodial interrogation, despite the fact that he had invoked his right to remain silent, there was no further interrogation taking place at that point, so the statement that he made at that point were simply voluntary statements on his part.

(*Id.* at 30.)

Based on these reasons explained by the trial court, a reasonable jurist could conclude that Petitioner voluntarily and knowingly waived his *Miranda* rights when he made incriminating statements to Investigator Baggett while in the patrol car and to Investigator Jackson at the Sheriff's office prior to invoking his right to remain silent. Petitioner has failed to demonstrate that the state court's decision with respect to the second and fourth motion in limine was contrary to, or involved an unreasonable application of clearly established federal law. Ground one is due to be denied.

**Ground Two: The trial court did not deny Petitioner due process at sentencing and did not sentence Petitioner to a more onerous sentence than the evidence supported.**

Respondent correctly argues that this claim is unexhausted because Petitioner did not raise this claim in state court. Although Petitioner filed a motion for modification of sentence under Rule 3.800(c), his motion was premised entirely upon state law. He did not allege that the trial court denied him due process or otherwise violated his rights under federal law, nor did Petitioner even reference his constitutional rights or federal law. Petitioner also cannot return to state court at this juncture to present this federal claim. Ground two is therefore also procedurally defaulted.

A procedurally defaulted claim like Petitioner's can support federal habeas relief in only two narrow situations. First, the petitioner may demonstrate cause and prejudice for the default. *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him . . . ." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Attorney error that constitutes ineffective assistance of counsel violative of the Sixth Amendment can render "cause." *Murray v. Carrier*, 477 U.S. 478, 487 (1986). But, an ineffective assistance of counsel claim must generally be presented to the state courts as an independent claim

before it can be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (citing *Murray*, 477 U.S. at 489). In such case, unless the prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, the ineffective assistance of counsel claim cannot serve as cause for another procedurally defaulted claim. *Id.* at 453. To show prejudice, the petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Second, the petitioner may show that enforcing the procedural default would result in a fundamental miscarriage of justice. *Mize*, 532 F.3d at 1190. To show a fundamental miscarriage of justice, the petitioner must show that in light of new evidence, no reasonable juror would have convicted him. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner, however, has failed to demonstrate either cause and prejudice for the default or a fundamental miscarriage of justice. Petitioner provides no reason for his failure to properly exhaust this claim in state court. The Court therefore need not proceed to the issue of prejudice. *See Ward v. Hall*, 592 F.3d 1144 (11th Cir. 2010) ("It is well established that if

the petitioner fails to show cause, we need not proceed to the issue of prejudice."). Nor does this claim involve new evidence upon which no reasonable juror would have convicted him. Petitioner therefore cannot demonstrate a fundamental miscarriage of justice to excuse his procedural default. *See Mize*, 532 F.3d at 1190. Accordingly, Petitioner is not entitled to federal habeas relief on ground two.

### Ground Three: Trial counsel did not render ineffective assistance of counsel in failing to object to the manslaughter jury instructions.

Petitioner argues in ground three that trial counsel rendered deficient performance by failing to object to the jury instructions pertaining to manslaughter, which Petitioner claims were "fundamentally flawed." Petitioner further claims that counsel's failure to object denied Petitioner of his right to due process.

For starters, ground three is insufficiently pled. Petitioner offers no facts in support of his claim, nor does he suggest how the jury instructions were "fundamentally flawed."

Assuming, however, that this claim is the same claim that Petitioner raised in ground one of his motion for postconviction relief, in which he argued that the jury instructions erroneously listed intent to kill as an essential element for manslaughter, (ECF No. 19-4 at 106–12), the claim is

without merit.

The circuit court denied this claim on the merits, noting that "[a]t trial, the Court instructed the jury using a correct standard instruction for the offense of manslaughter. The instruction did not require the jury to find that Defendant had an intent to kill the victim . . . . Rather, the instruction lawfully required the jury to find that Defendant *intentionally committed an act* that caused the death of the victim." (*Id.* at 179) (emphasis in original). The First DCA per curiam affirmed. (*Id.* at 263.)

Petitioner has not demonstrated that the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law. As the state court noted, the manslaughter instruction did not require a finding that Petitioner intended to kill the victim. Rather, the instruction properly required the State to prove that Petitioner had "an intent to commit an act that was not merely negligent, justified, or excusable and which caused death." (ECF No. 19-1 at 110; ECF No. 19-3 at 331); *see State v. Montgomery*, 39 So. 3d 252, 257 (Fla. 2010) ("[T]he relevant intent [for manslaughter by act] is the intent to commit an act which caused death, and the State is not required to prove that the defendant intended to kill the victim."). Thus, counsel had no reason to object to the manslaughter jury instruction. Petitioner therefore cannot

demonstrate either deficient performance or prejudice. Ground three should be denied.

### Ground Four: Trial counsel did not render ineffective assistance of counsel in failing to object to jury instructions, which Petitioner says denied the jurors of their pardoning power.

In ground four Petitioner claims trial counsel rendered deficient performance by failing to object to the jury instructions, which were confusing, misleading, and denied the jurors of their pardoning power. Petitioner further claims that counsel's failure to object denied Petitioner his right to due process.

Ground four like the other grounds is insufficiently pled. Petitioner offers no facts in support of his claim, nor does he suggest how the jury instructions were confusing, misleading, or denied jurors of their pardoning power.

Assuming  this claim is the same claim Petitioner raised in ground two of his motion for postconviction relief, the Court agrees with Respondent that the claim is without merit.

Petitioner argued in his motion for postconviction relief that the jury instructions erroneously instructed the jury that if it returned a verdict of guilty it should be for the highest offense which has been proven beyond a reasonable doubt, rather than being instructed that if the jury returned a

verdict of guilty it should be for the offense which is proven beyond a reasonable doubt. (ECF No. 19-4 at 113.) Petitioner claimed that the word "highest" misled the jury and forced them to find Petitioner guilty of second degree murder rather than the lesser included offense of manslaughter. (*Id.* at 113–14.)

The circuit court examined the jury instructions in full, found no error, and therefore denied this claim on the merits. (*Id.* at 179.) The First DCA subsequently per curiam affirmed. (*Id.* at 263.)

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law. The jury instructions were as follows:

> [I]f you decide that the main accusation has not been proved beyond a reasonable doubt, you will next need to decide if the defendant is guilty of any lesser included crime. . . . . You may find the defendant guilty as charged in the Indictment or guilty of such lesser included crime as the evidence may justify or not guilty. If you return a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt. If you find that no offense has been proven beyond a reasonable doubt, then, of course, your verdict must be not guilty. Only one verdict may be returned as to the crime charged. This verdict must be unanimous, that is, all of you must agree to the same verdict.

(ECF No. 19-1 at 108, 114; ECF No. 19-3 at 327; ECF No. 19-4 at 2–3.)

These jury instructions were not erroneous, confusing, or misleading.

Notably, the instructions mirrored the Florida Standard Jury Instructions in Criminal Cases, which were approved by the Florida Supreme Court. *See* Fla. Std. Jury Instr. (Crim.) 3.4, 3.12; *see also Sanders v. State*, 946 So. 2d 953, 958 (Fla. 2006) (discussing how the jury must decide the facts of the case and apply the law to those facts and that "[a]lthough the jury also is instructed about lesser-included offenses, the instruction specifically allows the jury to consider a lesser-included offense *only* if it 'decides that the main accusation has not been proved beyond a reasonable doubt'"). Counsel had no reason to object to the instructions and Petitioner cannot show that he was prejudiced as result of counsel's failure to object. Accordingly, ground four should be denied.

**Ground Five: Trial counsel did not render ineffective assistance of counsel by failing to have Petitioner psychologically evaluated and present expert testimony at trial pertaining to Petitioner's state of mind at the time of the offense to demonstrate mitigating circumstances.**

Ground five is insufficiently pled. Petitioner offers no facts in support of his claim, nor does he suggest what a psychological evaluation would have revealed or what the alleged mitigating circumstances were at the time of the offense.

Assuming, however, that this claim is the same claim that Petitioner raised in ground three of his motion for postconviction relief, the Court

agrees with Respondent that the claim is without merit.

In ground three of his motion for postconviction relief Petitioner alleged that a psychological evaluation "would have shown the extreme distress the Defendant was under having to deal with the emotional and physical abuse from his wife . . . and caring for his mother full time [who] was living in the home with advanced stages of Alzheimer's disease." (ECF No. 19-4 at 117.) He further argued that a psychological evaluation,

> would have shown that the defendant's state of mind the night of the crime, how any un-diagnosed psychological illness, combined with the stress of trying to care for his ailing mother, trying to work on his marriage to the woman he wanted to spend the rest of his life with, combined with the level of alcohol and the pain of defendant's thumb being slammed in a door, may have contributed to a moment of insanity, thereby creating mitigating circumstances for the jury to consider during trial.

(*Id.* at 118.)

The circuit court denied this claim on the merits, noting there was no evidence that a psychological evaluation would have affected the outcome of the proceeding or resulted in a different verdict, and the First DCA affirmed. (*Id.* at 179–80, 263.)

Petitioner has not demonstrated that the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law. Under Florida law, evidence of an abnormal mental

condition—not constituting legal insanity—is not admissible for the purpose of proving that the defendant could not or did not entertain the specific intent necessary for poof of the offense. *Spencer v. State*, 842 So. 2d 52, 63 (Fla. 2003); *Chestnut v. State*, 538 So. 2d 820 (Fla. 1989). Petitioner has not alleged that he was incompetent or legally insane at the time of the offense. Thus, any evidence pertaining to Petitioner's mental state at the time of the offense would not have been admissible to prove that he did not intend to commit the offense. Counsel, therefore, was not deficient in failing to attempt to present testimony at trial about Petitioner's mental condition at the time of the offense.

Petitioner also could not have been prejudiced because the testimony would not have been admissible. Even assuming the testimony was admissible, the jury found Petitioner guilty of second degree murder, not first degree murder as charged in the Indictment, which demonstrates that the jury did indeed consider the circumstances of the shooting. Accordingly, ground five does not warrant federal habeas relief.

**Ground Six: Trial counsel did not render ineffective assistance of counsel by failing to interview, depose, and call witnesses at trial who would have presented mitigating evidence and favorable testimony.**

Ground six is also insufficiently pled. Petitioner offers no facts in support of his claim. He does not suggest which witnesses counsel should

have interviewed, deposed, or called at trial, nor does he explain what "favorable testimony" those witnesses would have provided. Petitioner also has not explained how the alleged "favorable testimony" would have changed the outcome of his trial.

Assuming this claim is the same claim that Petitioner raised in ground four of his motion for postconviction relief, this claim is without merit.

In his motion for postconviction relief Petitioner claimed counsel failed to call the following witnesses: (1) His neighbors Bob and Irene, who would have testified about Petitioner's "good moral character" and the instances in which they heard Petitioner's wife yelling at Petitioner; (2) Bubba and Suzanna Gordon, who would have testified that Petitioner's wife was frequently drunk and physically abusive to Petitioner and that Petitioner was under extreme distress about being the sole care giver for his mother with advanced Alzheimer's; and (3) Mark Osterberg, who would have testified that Petitioner often had to remove himself and his mother from the house when Petitioner's wife became angry and that Petitioner was under extreme distress trying to take care of his mother. (ECF No. 19-4 at 120–22.)  Petitioner claimed that there was a reasonable probability that the outcome of his trial would have been different had these witnesses

been called at trial, specifically because no other witnesses were called at trial to present mitigating testimony. (*Id.* at 121–22.)

The circuit court denied this claim, finding that none of the witnesses would have led to a different outcome had they been called at trial. (*Id.* at 180.) Thus, because there was no prejudice, Petitioner's ineffective assistance of counsel claim failed on the merits. (*Id.*) The First DCA subsequently per curiam affirmed. (*Id.* at 263.)

Petitioner has failed to show that the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law to warrant habeas relief. For starters, Petitioner has not provided any affidavits from the aforementioned witnesses demonstrating that they would have testified as Petitioner claims. Nevertheless, as previously discussed, Petitioner admitted to shooting his wife before he was in custody and prior to any custodial interrogation requiring *Miranda* rights. Even assuming these witnesses had testified about Petitioner's "good moral character," that his wife yelled and was abusive, and that Petitioner was under distress because he was caring for his mother, their testimony would not justify or excuse the substantial evidence at trial which showed that Petitioner shot his wife in the head. Petitioner therefore cannot demonstrate that he was prejudiced by counsel's failure to call these

witnesses at trial. Accordingly, ground six should be denied.

### Ground Seven: Trial counsel did not render ineffective assistance of counsel by failing to properly investigate, prepare, and present an adequate theory of defense at trial.

Petitioner claims defense counsel rendered deficient performance by failing to present an adequate theory of defense because counsel only made an opening and closing argument and did not present any witnesses. Respondent argues that this claim is without merit. The Court agrees.

Petitioner presented this claim in ground five of his motion for postconviction relief. (ECF No. 19-4 at 125–28.) The circuit court denied the claim, explaining:

> After being read his Miranda rights, Defendant admitted during questioning to shooting the victim in the head. Although Defendant attempted to have the admissions suppressed, the Court denied Defendant's motions and the incriminating statements were submitted to the jury.
> Prior to his admission, Defendant was seen by Deputy Kerem Suhi standing over the victim's body. When asked by the deputy who had shot the victim, Defendant responded that he had shot her. Defendant was then arrested. The Court finds that Defendant has failed to point to specific defenses counsel could have raised that would have altered the outcome of the proceeding. This claim, as a result, is denied.

(*Id.* at 180–81.) The First DCA per curiam affirmed without written opinion. (*Id.* at 263.)

Petitioner has not demonstrated that the state court's decision was

contrary to, or involved an unreasonable application of clearly established

federal law. For starters, as the state court explained, Petitioner has not

pointed to any specific defenses that his counsel should have presented at

trial. Counsel could not have been deficient for failing to present an

unidentified theory of defense.

Moreover, Petitioner admitted to shooting his wife before he was in

custody and prior to any custodial interrogation requiring *Miranda* rights.

Thus, even assuming counsel could have theoretically presented some

type of defense at trial, Petitioner cannot demonstrate that the outcome of

the trial would have been different to establish the requisite prejudice.

Ground seven should therefore be denied.

**Ground Eight: Trial counsel did not render ineffective assistance of counsel in failing to object to fundamentally flawed manslaughter jury instructions.**

Ground eight mirrors ground three. Accordingly, for the same

reasons discussed with respect to ground three, ground eight should be

denied.

**Ground Nine: Trial counsel did not render ineffective assistance of counsel by failing to object to the manslaughter jury instructions, which were confusing, misleading, and denied jurors of their pardoning power.**

Ground nine presents the same claim advanced in ground four.

Accordingly, for the same reasons as ground four, ground nine should be

denied.

**Ground Ten: Trial counsel did not render ineffective assistance of counsel by failing to have Petitioner psychologically evaluated or provide any expert witnesses.**

Ground ten is the same claim raised in ground five. Thus, for the

same reasons discussed with respect to ground five, ground ten should be

denied.

**Ground Eleven: Trial counsel did not render ineffective assistance of counsel by failing to interview, depose, and call at trial available exculpatory defense witnesses.**

Ground eleven presents the same claim as ground six. Thus, for the

same reasons as ground six, ground eleven should be denied.

**Ground Twelve: Trial counsel did not render ineffective assistance of counsel by failing to properly investigate, prepare, and present an adequate theory of defense.**

Ground twelve mirrors ground seven. Accordingly, for the same

reasons discussed with respect to ground seven, ground twelve should be

denied.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue

or deny a certificate of appealability when it enters a final order adverse to

the applicant," and if a certificate is issued "the court must state the

specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for Writ of Habeas Corpus, ECF No. 1, should be **DENIED**, and that a certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 20th day of June 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.